IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| BETTYE HARDY SMILEY | ) | CASE NO: 14-03220-MAM-13 |
| SSN: XXX-XX-9045 | ) | |
| | ) | CHAPTER 13 |
| DEBTOR. | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY OF SECTION 362(a)**

COMES NOW, your Petitioner, First Cahawba Bank (hereinafter referred to as "First Cahawba") and respectfully represents and shows unto the Court as follows:

1. That the Debtor, Betty Hardy Smiley (hereinafter "Debtor"), in the above styled cause filed a petition in the United States Bankruptcy Court for the Southern District of Alabama, the same being Case No. 14-03220-MAM-13.

2. That prior to, and on to-wit: December 17, 2012, the Debtor executed a Promissory Note secured by a Mortgage from Debtor to Lender on real estate located in Dallas County, Alabama at 614 Texas Court, Selma, Alabama 36701. A copy of the Promissory Note is attached hereto as Exhibit "A" and a copy of the Mortgage is attached hereto as Exhibit "B" and incorporated herein by reference.

3. That according to the confirmed Chapter 13 plan, the debt was placed outside the plan and the payments, except for any arrearage, are to be paid directly to First Cahawba.

4. That First Cahawba avers that the Debtor has failed and refused to make payments to First Cahawba as set out in the confirmed plan and the payments are now in default.

5. That First Cahawba further avers that under the terms of the Promissory Note and Mortgage, it retains an interest in the collateral that is superior to the interest of the Trustee. First

Cahawba further avers that there is no value in the collateral herein beyond the indebtedness owed to First Cahawba and there is no equity in the said collateral for the estate.

6.  That First Cahawba also claims fees and costs for the filing of this Motion.

WHEREFORE, THE PREMISES CONSIDERED, First Cahawba prays that this Honorable Court will enter an Order granting its above and foregoing motion, and for such further and other relief as this Court deems proper.

Respectfully submitted on this the 24th day of February, 2015.

    /s/ James B. McNeill, Jr.
James B. McNeill, Jr.  ASB-4517-I63J
Attorney for First Cahawba Bank

OF COUNSEL:
Hobbs & Hain, P.C.
P.O. Box 1190
Selma, Alabama 36702-1190
(334) 874-6683
(334) 872-8435 *Facsimile*
jbm@hhpclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

T. Randolph Harrold, Esq.
Randy Harrold, LLC
P.O. Box 692
Selma, Alabama 36702-0692

Daniel B. O'Brien
Chapter 13 Trustee
P.O. Box 1884
Mobile, Alabama 36633-1884

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Ms. Bettye Hardy Smiley
P.O. Box 216
Selma, Alabama 36702-0216

DATED this the 24th day of February, 2015

    /s/ James B. McNeill, Jr.
James B. McNeill, Jr.  ASB-4517-I63J

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 1700000106 | Bettye Hardy Smiley | | 12/17/12 | |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $28,136.52 | Not Applicable | 5.500% | 12/16/17 | Consumer |
| | | Creditor Use Only | | |

# PROMISSORY NOTE
(Consumer - Closed End)
RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is December 17, 2012. The parties and their addresses are:

**LENDER:**
FIRST CAHAWBA BANK
2610 Citizens Parkway
P.O. Box 2140
Selma, AL 36701
Telephone: (334) 875-2050

**BORROWER:**
BETTYE HARDY SMILEY
524 Hampton Road
Selma, AL 36701

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

   A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

   B. **Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

   G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

2. **RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| October 26, 2007 | # 1700000106 | $35,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $27,511.52.

3. **PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $28,136.52 (Principal) plus interest from December 17, 2012 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

4. **INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **5.500 percent** (Interest Rate).

   A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, plus an additional 3.000 percent, until paid in full.

   B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

   C. **Statutory Authority.** The amount assessed or collected on this Note is authorized by the Alabama usury laws under Ala. Code, title 8 chapt. 8.

   D. **Accrual.** Interest accrues using an Actual/365 days counting method.

5. **ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

   A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.
      **Processing Fee.** A(n) Processing Fee fee of $225.00 payable from the loan proceeds.
      **Appraisal.** A(n) Appraisal fee of $400.00 payable from the loan proceeds.

6. **REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged **5.000** percent of the Unpaid Portion of Payment. However, this charge will not be greater than **$100.00**. I will pay this late charge promptly but only once for each late payment.

**7. PAYMENT.** I agree to pay this Note in **60** payments. This Note is amortized over **180** payments. I will make **59** payments of **$229.90** beginning on January 16, 2013, and on the 16th day of each month thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due December 16, 2017. You will deliver or mail to me notice prior to maturity that the balloon payment is due. This notice will state the balloon payment amount and the date that it is due.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to escrow that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Note in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is to renew loan.

**10. SECURITY.** The Loan is secured by previously executed, separate security instruments, including the following: 1st Mortgage on rental real estate located at 614 Texas Court, Selma, Alabama 36701 as evidenced by a mortgage dated October 26, 2007 and recorded in book 1387 page 183 at the probate office in Dallas County.

**11. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**12. DUE ON SALE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Note. The execution and delivery of this Note will not violate any agreement governing me or to which I am a party.

**18. APPLICABLE LAW.** This Note is governed by the laws of Alabama, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**19. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**20. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or limitations of Sections 19(a), 32 or 35 of Regulation Z or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**21. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**22. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**23. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**24. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**25. AGREEMENT TO ARBITRATE.** You or I may submit to binding arbitration any dispute, claim or other matter in question between or among you and me that arises out of or relates to this Transaction (Dispute), except as otherwise indicated in this section or as you and I agree to in writing. For purposes of this section, this Transaction includes this Note and the other Loan Documents, and proposed loans or extensions of credit that relate to this Note. You or I will not arbitrate any Dispute within any "core proceedings" under the United States bankruptcy laws.

You and I must consent to arbitrate any Dispute concerning a debt secured by real estate at the time of the proposed arbitration. You may foreclose or exercise any powers of sale against real property securing a debt underlying any Dispute before, during or after any arbitration. You may also enforce a debt secured by this real property and underlying the Dispute before, during or after any arbitration.

You or I may, whether or not any arbitration has begun, pursue any self-help or similar remedies, including taking property or exercising other rights under the law; seek attachment, garnishment, receivership or other provisional remedies from a court having jurisdiction to preserve the rights of or to prevent irreparable injury to you or me; or foreclose against any property by any method or take legal action to recover any property. Foreclosing or exercising a power of sale, beginning and continuing a judicial action or pursuing self-help remedies will not constitute a waiver of the right to compel arbitration.

The arbitrator will determine whether a Dispute is arbitrable. A single arbitrator will resolve any Dispute, whether individual or joint in nature, or whether based on contract, tort, or any other matter at law or in equity. The arbitrator may consolidate any Dispute with any related disputes, claims or other matters in question not arising out of this Transaction. Any court having jurisdiction may enter a judgment or decree on the arbitrator's award. The judgment or decree will be enforced as any other judgment or decree.

You and I acknowledge that the agreements, transactions or the relationships which result from the agreements or transactions between and among you and me involve interstate commerce. The United States Arbitration Act will govern the interpretation and enforcement of this section.

---

Bettye Hardy Smiley
Alabama Promissory Note
AL/4XXLSMITH00000000000648039122612N

Wolters Kluwer Financial Services ©1996, 2012 Bankers Systems™　　　　Page 3

The American Arbitration Association's Commercial Arbitration Rules, in effect on the date of this Note, will govern the selection of the arbitrator and the arbitration process, unless otherwise agreed to in this Note or another writing.

**26. WAIVER OF TRIAL FOR ARBITRATION.** You and I understand that the parties have the right or opportunity to litigate any Dispute through a trial by judge or jury, but that the parties prefer to resolve Disputes through arbitration instead of litigation. If any Dispute is arbitrated, you and I voluntarily and knowingly waive the right to have a trial by jury or judge during the arbitration.

**27. SIGNATURES.** By signing under seal, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_/s/ Bettye Hardy Smiley_ Date 12/17/2012 (Seal)
Bettye Hardy Smiley
Individually

LENDER:

First Cahawba Bank

By _/s/ Lester A. Smith_ Date 12/17/2012 (Seal)
Lester A. Smith, Senior Lending Officer

RLPY    1387    183
Recorded In Above Book and Page
10/26/2007 03:26:04 PM
KIMBROUGH L BALLARD
Judge of Probate
Dallas County, Alabama

_Space Above This Line For Recording Data_

This instrument was prepared by

# MORTGAGE

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is October 26, 2007. The parties and their addresses are:

**MORTGAGOR:**
BETTYE HARDY SMILEY
An unmarried individual
524 Hampton Road
Selma, AL 36701

**LENDER:**
FIRST CAHAWBA BANK
Organized and existing under the laws of the United States of America
2610 Citizens Parkway
Selma, Alabama  36701

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys, sells and mortgages to Lender, with power of sale, the following described property:

see attached exhibit "A"

The property is located in Dallas County at 614 Texas Court, Selma, Alabama 36701.
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $35,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000005752019102607N               ©1996 Bankers Systems, Inc., St. Cloud, MN _Experf_®               Initials 
Page 1

the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

   **A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 1700000106, dated October 26, 2007, from Mortgagor to Lender, with a loan amount of $35,000.00 and maturing on October 25, 2012.

   **B. Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage with the power of sale the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

   **A.** To make all payments when due and to perform or comply with all covenants.

   **B.** To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   **C.** Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000000575201910260 7N    ©1996 Bankers Systems, Inc., St. Cloud, MN Expere®    Initials _____
Page 2

RLPY    1387    184
Recorded In Above Book and Page
10/26/2007 03:26:04 PM
KIMBROUGH L BALLARD
Judge of Probate
Dallas County, Alabama

Case 14-03220    Doc 18    Filed 02/24/15    Entered 02/24/15 15:24:21    Desc Main
             Document    Page 8 of 18

Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. DEFAULT.** Mortgagor will be in default if any of the following occur:

**A. Payments.** Mortgagor fails to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

**C. Death or Incompetency.** Mortgagor dies or is declared legally incompetent.

**D. Failure to Perform.** Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

**E. Other Documents.** A default occurs under the terms of any other document relating to the Secured Debts.

**F. Other Agreements.** Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

**G. Misrepresentation.** Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

**K. Property Transfer.** Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

**L. Property Value.** Lender determines in good faith that the value of the Property has declined or is impaired.

**M. Insecurity.** Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

**13. REMEDIES.** On or after default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including, without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter.

If Lender initiates a judicial foreclosure, Lender will give the notices as required by applicable law. If Lender invokes the power of sale, Lender will publish the notice of sale, and arrange to sell all or part of the Property, as required by applicable law. Lender or its designee may purchase the Property at any sale. Lender will apply the proceeds of the sale in the manner required by applicable law. The sale of any part of the Property will only operate as a foreclosure of the sold Property, so any remaining Property will continue to secure any unsatisfied Secured Debts and Lender may further foreclose under the power of sale or by judicial foreclosure.

Upon any sale of the Property, Lender will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Lender will covenant that Lender has not caused or allowed a lien or an encumbrance to burden the Property and that Lender will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000000005752019102607N ©1996 Bankers Systems, Inc., St. Cloud, MN Exçeri® Initials
Page 3

RLPY 1387 185
Recorded In Above Book and Page
10/26/2007 03:26:04 PM
KIMBROUGH L BALLARD
Dallas County, Alabama

Case 14-03220  Doc 18  Filed 02/24/15  Entered 02/24/15 15:00:21  Desc Main
Document  Page 9 of 18

and demand of all persons claiming by, through or under Lender. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**14. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect and preserve the Property and for any recordation costs of releasing the Property from this Security Instrument. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

**15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

   C. Mortgagor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**16. CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**17. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

---

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000000575201910260 7N   ©1996 Bankers Systems, Inc., St. Cloud, MN  Exṗereṡ®   Initials 
Page 4

RLPY    1387    186
Recorded In Above Book and Page
10/26/2007  03:26:04 PM
KIMBROUGH L BALLARD
Judge of Probate
Dallas County, Alabama

**18. CO-SIGNERS.** If Mortgagor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debts and Mortgagor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**19. WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement rights relating to the Property.

**20. APPLICABLE LAW.** This Security Instrument is governed by the laws of Alabama, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**21. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor individually or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Mortgagor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**23. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**24. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any financial statements or information Lender requests. All financial statements and information Mortgagor gives Lender will be correct and complete. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

```
        RLPY    1387    187
Recorded In Above Book and Page
    10/26/2007 03:26:04 PM
      KIMBROUGH L BALLARD
         Judge of Probate
       Dallas County, Alabama
```

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000005752019102607N        ©1996 Bankers Systems, Inc., St. Cloud, MN  Experō®            Initials
Page 5

SIGNATURES. By signing under seal, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

_Bettye Hardy Smiley_ (Seal)
Bettye Hardy Smiley
Individually

LENDER:

First Cahawba Bank

By _Lester A. Smith_ (Seal)
Lester A. Smith, Senior Lending Officer

ACKNOWLEDGMENT.
(Individual)
State OF Alabama, County OF DALLAS ss.
I, Faye Lockhart, a notary public, hereby certify that Bettye Hardy Smiley, an unmarried individual, whose name(s) is/are signed to the foregoing instrument, and who is/are known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he/she/they executed the same voluntarily on the day the same bears date. Given under my hand this 26th day of October, 2007.
My commission expires: 10/30/2008    _Faye Lockhart_
                                     (Notary Public)

RLPY    1387    188
Recorded In Above Book and Page
10/26/2007 03:26:04 PM
KIMBROUGH L BALLARD
Judge of Probate
Dallas County, Alabama

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000000575201910260N    ©1996 Bankers Systems, Inc., St. Cloud, MN Expere®    Initials 
Page 6

(Lender Acknowledgment)

STATE OF ALABAMA, County OF DALLAS ss.
I, Joyce Bearden, a notary public, in and for said County in said State, hereby certify that Lester A. Smith, whose name(s) as Senior Lending Officer of First Cahawba Bank, a corporation, is/are signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he/she/they, as such officer(s) and with full authority, executed the same voluntary for and as the act of said corporation. Given under my hand this the 26th day of October, 2007.

My commission expires:
7-29-08

_Joyce Bearden_
(Notary Public)



```
RLPY     1387    189
Recorded In Above Book and Page
   10/26/2007 03:26:04 PM
      KIMBROUGH L BALLARD
         Judge of Probate
      Dallas County, Alabama
```

Bettye Hardy Smiley
Alabama Mortgage
AL/4XXXMHALE00000000005752019102607N

©1996 Bankers Systems, Inc., St. Cloud, MN Experts®

Initials
Page 7

# EXHIBIT "A"

"A" of Lot 1 of Block 121, according to a subdivision of Lots 1, 2, and 3 of Block 121, Selma, Alabama, recorded in Map Book 3, Page 109, in the Probate Office of Dallas County, Alabama.

This property is located at 614 Texas Alley, Selma, Al. 36701.

```
Mortgage Tax        52.50
Recording Fee       32.00
TOTAL               84.50
```

```
RLPY     1387      190
Recorded In Above Book and Page
10/26/2007 03:26:04 PM
KIMBROUGH L BALLARD
Judge of Probate
Dallas County, Alabama
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| BETTYE HARDY SMILEY ) | CASE NO: 14-03220-MAM-13 |
| SSN: XXX-XX-9045 ) | |
| ) | CHAPTER 13 |
| DEBTOR. ) | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

"I, Lester A. Smith, Jr., Executive Vice-President and CLO of First Cahawba Bank, hereby state the following:

1. First Cahawba Bank ("First Cahawba") and its successors and/or assigns, is authorized to sue on its own behalf.

2. I am the Executive Vice-President and Chief Loan Officer of First Cahawba and hereby make this Affidavit in such capacity. All facts recited herein are within my personal knowledge of all records concerning the account with Debtor and are true and correct.

3. I am familiar with the manner and method in which First Cahawba maintains its books and records in its regular course of business.

4. I have reviewed the books and records which reveal that First Cahawba is the owner and holder of a Promissory Note on Real Estate Loan Account Number 1700000106 signed by Bettye Hardy Smiley ("Debtor"). First Cahawba's promissory note is secured under the mortgage in that certain real estate located in Dallas County, Alabama located at 614 Texas Court, Selma, Alabama and more particularly

described in those documents, recorded in the Probate Office of Dallas County, Alabama in RLPY Book 1387, Page 183, et seq..

5. By virtue of the promissory note and mortgage, First Cahawba is the holder of a secured claim against the Debtor.

6. Debtor was in default of her obligation prior to filing her Petition in Bankruptcy for the months of July, August and September, 2014.

7. Debtor is in default on her obligation to First Cahawba in that Debtor has failed to make payments when due and owing pursuant to the terms of the plan.

8. As of October 16, 2014 the total indebtedness was $26,558.44.

9. Since October 16, 2014 a total of $448.22 of interest has accrued.

10. First Cahawba had the property appraised and based on said appraisal the property has a liquidation value of $20,000.00.

11. First Cahawba has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Promissory Note and Mortgage.

12. I declare that the foregoing facts are true and correct.

FURTHER AFFIANT SAYETH NOT."

First Cahawba Bank

*/s/ Lester A. Smith, Jr.*
Lester A. Smith, Jr.
Executive Vice-President and CLO

STATE OF ALABAMA )

COUNTY OF DALLAS )

SWORN TO AND SUBSCRIBED TO before me by Lester A. Smith, Jr. on this the 24th day of February, 2015.

(SEAL)

_____
Notary Public
My Commission Expires: My Commission Expires 11/21/2017

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24th, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

T. Randolph Harrold, Esq.
Randy Harrold, LLC
P.O. Box 692
Selma, Alabama 36702-0692

Daniel B. O'Brien
Chapter 13 Trustee
P.O. Box 1884
Mobile, Alabama 36633-1884

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Ms. Bettye Hardy Smiley
P.O. Box 216
Selma, Alabama 36702-0216

DATED this the 24th day of February, 2015

/s/ James B. McNeill, Jr.
James B. McNeill, Jr.  ASB-4517-I63J

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

Betty Hardy Smiley
Debtor(s)

First Cahawba Bank
Movant

Bankruptcy Case No. 14-03220-M

_____
Name of Creditor or Claimant
(if different from Movant)

## FACT SUMMARY FOR MOTION FOR RELIEF FROM AUTOMATIC STAY TO FORECLOSE SECURITY AND LEASHOLD INTERESTS IN CHAPTER 7 AND CHAPTER 13 CASES

Date and Type of Loan/Credit Transaction: 12/17/ and Consumer Mortgage Loa
Type of Collateral: Real Property        Monthly Payment: $229.90
Amount Financed: $28,136.52              APR or Interest Rate: 5.50 %
Term of Loan: 60                         Months or 5 Years
Payoff Amount: $26,558.44                As of 2/24/15
Value of Collateral: $20,000.00          Method of Valuation: Appraisal
Delinquent Pre-Petition Payments:
   What Month(s)? July, August and September, 20
   Amount: $689.70
   Claim Filed: ____ Yes or ✔ No
   Date Claim Filed: ____
Delinquent Post-Petition Payments:
   What Month(s)? 11/14, 12/14, 01/15, 02/15
   Amount: $800.00
   Claim Filed: ____ Yes or ✔ No
   Date Claim Filed: ____
   Other Charges & Cost (itemize): ____

Amount & Number of Post-Petition Payment Received: $0.00 and 0
Amount held in Suspense: ____
If Lease, Lease Expiration Date: ____
If Terminated, Lease Terminated Date: ____
Does Creditor have Proof of Insurance in force: ____ Yes ✔ No ____ Unknown
Prior Stay Order(s) Involving Movant including Current Case: ____ Yes ✔ No
   If yes, give case number(s) and dates(s) of order(s)
   Case No.: ____ Date: ____
   Case No.: ____ Date: ____
   Case No.: ____ Date: ____

Date: 02/24/2015        Submitted By: [signature]